Chase Riveland Executive Director Department of Corrections Suite 2200, North Building 2860 South Circle Drive Colorado Springs, CO 80906
Dear Mr. Riveland:
I am writing in response to John Perko's request for a formal legal opinion regarding the use of high-voltage electrical barriers at correctional facilities to aid in the prevention of escapes. It is my understanding that the Department of Corrections would like to install electrified barriers between two 12-foot perimeter fences with warning symbols and signs attached. Further, I understand that the Department of Corrections believes that the installation of such barriers would prevent or greatly reduce escapes from correctional facilities.
QUESTION PRESENTED AND CONCLUSION
Can the Department of Corrections install electrical barriers around the perimeters of correctional facilities to help prevent escapes?
 My conclusion is that it can. However, injuries to individuals properly in the area caused by contact with the barriers may result in civil liability to the department.
ANALYSIS
The executive director of the Department of Corrections has statutory authority to manage, supervise, and control the penal, correctional, and reformatory institutions operated and supported by the state. C.R.S. 1973, 17-1-103(1)(a) (1978 repl. vol. 8). Another statute provides that any person sentenced to a correctional facility is deemed to be in the custody of the executive director. C.R.S. 1973, 16-11-308(1) (1978 repl. vol. 8). These statutes support the conclusion that the executive director has authority to keep inmates in his custody by confining them within the fences which surround a penal institution. The question here, however, is whether these fences may carry high-voltage electrical charges. Because there are no statutes or court decisions which directly address this question, we must consider whether civil or criminal liability may be imposed under other principles of law.
In the event an inmate is injured on such an electrical barrier while attempting to escape, the department and its employees should be protected from criminal liability by C.R.S. 1973,18-1-707(8) (1978 repl. vol. 8):
 A guard or peace officer employed in a detention facility is justified:
 (a) In using deadly physical force when he reasonably believes it necessary to prevent the escape of a prisoner convicted of, charged with, or held for a felony, or confined under the maximum security rules of any detention facility as such facility is defined in subsection (9) of this section.
 (b) In using reasonable and appropriate physical force, but not deadly physical force, in all other circumstances when and to the extent that he reasonably believes it necessary to prevent what he reasonably believes to be the escape of a prisoner from a detention facility.[1]
Under subsections (a) and (b) of C.R.S. 1973, 18-1-707(8) (1978 repl. vol. 8), the general rule which may be relied upon is that the department and its officers will be free from criminal responsibility for injuries caused to inmates during escape attempts only if they use that amount of force reasonably believed necessary to prevent the escapes. An electrical barrier would qualify as such if it would provide additional assistance in preventing escapes beyond that provided by conventional barriers and assist in protecting the public from escaping inmates, without creating an excessive risk of injury or death to those who may come into contact with it.
C.R.S. 1973, 18-1-707(8) (1978 repl. vol. 8) releases the Department of Corrections and its officers from criminal responsibility where reasonable force has been used, but that does not exempt the department from the risk of civil liability for injuries resulting from contact with a high-voltage barrier. Civil liability in the case of an escaping inmate who is injured by the fence, however, is unlikely because the actions of the Department of Corrections and its employees taken to prevent an escape are privileged. Restatement (Second) of Torts, § 134 (1965).
This privilege exempts the department and its employees from civil liability for actions for which they might otherwise be liable when the actions are necessary to protect the public interest. Restatement (Second) of Torts, § 10 (1965). Other jurisdictions have used this common law privilege to expand statutes similar to section 18-1-707(8) to include release from civil liability as well. E.g.,Jones v. Marshall, 528 F.2d 132 (2d Cir. 1975);Belcher v. United States, 511 F. Supp. 476 (E.D. Pa. 1981). The absence of civil liability should also preclude the inmates from obtaining an injunction to stop the construction of an electrical barrier because they could not show a likelihood that they would succeed on the merits of the case, which is a condition precedent to obtaining an injunction. Macleod v.Miller, 44 Colo. App. 313, 612 P.2d 1158 (1980).
There is, however, a risk of civil liability in the maintenance of an instrumentality which is as potentially dangerous as an electrical fence. Conceivably, an employee or inmate properly in the area might be injured by the fence. Therefore, adequate safety precautions should be taken when inmates or employees are lawfully in the area.
SUMMARY
The use of an electrical barrier around the perimeter of a correctional facility is a reasonable use of physical force to prevent escapes from the facility and, therefore, is authorized by Colorado law.
Very truly yours,
 DUANE WOODARD Attorney General
CORRECTIONAL FACILITIES CORRECTIONS
C.R.S. 1973, 17-1-103(1)(a) (1978 repl. vol. 8)
C.R.S. 1973, 16-11-308 (1978 repl. vol. 8)
C.R.S. 1973, 18-1-707(8) (1978 repl. vol. 8)
C.R.S. 1973, 18-1-901(1) (1978 repl. vol. 8)
CORRECTIONS, DEPT. OF
The use of an electrical barrier around the perimeter of a correctional facility is a reasonable use of physical force prevent escapes from the facility and, therefore, is authorized by Colorado law.
[1] "Peace officer" includes "any officer, guard or supervisory employee of any institution within the department of corrections." C.R.S. 1973, 18-1-901(1) (1978 repl. vol. 8). "Detention facility" Means "any place maintained for the confinement . . . of persons . . . convicted of an offense. . . ." C.R.S. 1973, 18-1-707(9) (1978 repl. vol. 8).